### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J. GREGORY SIDAK<br>1323 Kirby Road<br>McLean, VA 22101, )<br><br>*Plaintiff*<br><br>v.<br><br>U.S. INTERNATIONAL TRADE<br>COMMISSION; DAVID S. JOHANSON, in his<br>official capacity as Chairman of the U.S.<br>International Trade Commission; RHONDA K.<br>SCHMIDTLEIN, JASON E. KEARNS,<br>RANDOLPH J. STAYIN, and  AMY A.<br>KARPEL, in their official capacities as<br>Commissioners of the U.S. International Trade<br>Commission,<br><br>*Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No.:** |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiff J. Gregory Sidak brings this complaint for declaratory and injunctive relief,

alleging as follows:

### INTRODUCTION

2.     This case challenges gross administrative overreach.  Plaintiff J. Gregory Sidak is

being subjected to an unconstitutional ▮▮▮▮ proceeding by defendants, the U.S. International

Trade Commission (ITC or Commission) and its Commissioners, in response to his efforts ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That entire proceeding is premised on ▮▮▮▮▮▮▮▮

entered by an Administrative Law Judge (ALJ) appointed in violation of the Appointments Clause.

Because the ALJ's appointment was constitutionally infirm, the order is a legal nullity and cannot

form the basis for subjecting Plaintiff ███████████. Compounding the constitutional problem, the Commission is denying Plaintiff due process in the ████████ proceeding. ████████████ ████████████████████████████████████████████████████████████████ ████████ the Commission has refused to consider submissions from counsel and instead demanded that Plaintiff respond solely in the form of personal affidavits. Plaintiff now asks this Court to vindicate his rights, and protect him from administrative vindictiveness and irreparable injury, by stopping the ITC's unconstitutional proceeding.

3.      Plaintiff is an attorney and economic expert who built a business that actively participated in proceedings in multiple fora, including courts and administrative agencies. Several years ago, when Plaintiff ████████████████████████████████████████████, the presiding ALJ made disparaging and injudicious comments that injured Plaintiff's professional reputation and devastated his business. Plaintiff believes that the ALJ's comments and conduct displayed, at a minimum, a shocking lack of judicial temperament and professionalism, and constitute actual or apparent misconduct. ████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████

4.      ████████████████████████████████████████

████████████████████, the ITC sought to flip the script by launching a proceeding into whether

Plaintiff ████████████████████████████. ████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

5.      Given that the potential ████████████████████████████

████████████████████████████████████, Plaintiff promptly retained counsel.

Although the ITC had directed Plaintiff to respond by affidavit, counsel sought to resolve the

matter by filing a letter brief explaining that Plaintiff had not violated ███████ as a matter of law

and that no affidavit was therefore necessary or appropriate. ████████████████████████████

3

██████████████████████████████████████████████████████

████.  Without addressing those legal arguments, the Commission responded by insisting that parties subject to its ██████ proceedings are permitted to respond *solely* by filing a sworn affidavit.  In other words, they cannot have legal counsel make arguments on their behalf; they are limited to admitting or denying facts under oath.  The Commission ignored counsel's letter and insisted that if Plaintiff attempted to make "any response submitted in a form other than an affidavit," the Commission might assume facts "contrary to [Plaintiff's] interests."

6.    Accordingly, under protest and without waiving any rights, Plaintiff filed an affidavit explaining that he had not ████████████.  Again, that was not enough for the Commission.  Instead, the Commission *expanded* the scope of the ██████ proceeding and requested that Plaintiff respond to yet additional questions.

7.    Enough is enough.  The ITC seems to believe that it can toy with Plaintiff and his livelihood at its whim, forcing him to file affidavit after affidavit while denying him the due process right to be represented by counsel.  For obvious reasons, Plaintiff would have preferred to resolve this matter without invoking this Court's assistance.  But it is now clear that the agency is not willing to leave him alone.  Accordingly, Plaintiff seeks protection from this Court against the here-and-now injury inflicted by the pending administrative proceeding on two separate and independent grounds.

8.    *First*, the pending proceeding is unconstitutional because ██████ on which it is based was entered by an ALJ appointed in violation of the Appointments Clause, U.S. Const. art. II § 2, cl. 2, and thus is a nullity.  The Constitution's structural provisions assigning and separating the powers of the Federal Government, and establishing rules governing the appointment of federal officers, do not reflect mere abstract principles, but are "designed to preserve the liberty of all the

4

people." *Collins v. Yellen*, 141 S. Ct. 1761, 1780 (2021).  These structural provisions ensure that no agent of the government acts "in excess of [its] delegated governmental power" and—for officials exerting Executive authority—that each is accountable to a democratically elected President.  *Bond v. United States*, 564 U.S. 211, 222 (2011).  As Justice Jackson famously explained, "the Constitution diffuses power the better to secure liberty." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).  As a result, when an agency violates the structural separation-of-powers limitations of the Constitution, including the Appointments Clause, "liberty is at stake." *Bond*, 564 U.S. at 222.  This case demonstrates why those structural provisions are vitally important as a check preventing agencies from riding roughshod over the rights of individuals.  Unlike virtually every other agency in the Federal Government, the Commission failed to take any steps in light of *Lucia v. SEC*, 138 S. Ct. 2044 (2018), to remedy the constitutional defect underpinning all prior orders of its ALJs.  Because the ALJ lacked the constitutional authority to enter the ▮▮▮▮▮▮▮ at issue in the pending proceeding against Plaintiff, that proceeding has no legal basis.

9.      *Second*, by forcing Plaintiff to respond to its ▮▮▮▮ proceeding solely through personal affidavits, the Commission is denying him elementary due process protections, including the right to defend himself through counsel.  It is well settled that "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Goldberg v. Kelly,* 397 U.S. 254, 270 (1970) (internal quotation omitted).  Where the potential ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮due process requires the government to permit the subject of its proceeding to be represented by counsel. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



10.     Plaintiff is entitled to declaratory and injunctive relief to stop the Commission's unconstitutional ████████ proceeding.  The entire proceeding is predicated on enforcing an order that is a legal nullity entered in violation of the Appointments Clause and is being conducted pursuant to procedures that deny due process. ██████████████████████████ ██████████████████████████ Judicial intervention now is both necessary and appropriate to vindicate the principle that administrative agencies, no less than other officials or organs of the Federal Government, are subject to the rule of law.

## PARTIES

11.     Plaintiff J. Gregory Sidak is an internationally renowned economic expert on valuation and damages issues.  His work has been cited by numerous courts, including the Supreme Court and the D.C. Circuit.  *See, e.g., Verizon Commc'ns, Inc. v. F.C.C.*, 535 U.S. 467, 476 (2002); *United States v. Microsoft Corp.*, 253 F.3d 34, 49-50 (D.C. Cir. 2001) (*en banc*; *per curiam*); *see also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F. 4th 476, 486 (5th Cir. 2021).  Because of his expertise, Plaintiff is frequently retained as an expert in legal proceedings, including proceedings before the ITC.  He is a resident of McLean, Virginia.

12.     Defendant International Trade Commission is an agency of the United States government headquartered in Washington, D.C.

13.     Defendant David S. Johanson is the Chairman of the ITC.  He is sued in his official capacity.

14.     Defendants Rhonda K. Schmidtlein, Jason E. Kearns, Randolph J. Stayin, and Amy A. Karpel are each Commissioners of the ITC.  Each is sued in his or her official capacity.

## JURISDICTION AND VENUE

15.     This action arises under the Constitution and laws of the United States.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, and 2201 and 5 U.S.C. § 702.

16.     Venue is proper under 28 U.S.C. § 1391(e)(1) because the defendant International Trade Commission resides in this district.

## FACTUAL BACKGROUND

**A.     Prior to 2018, the ITC Appointed All Its ALJs in Violation of the Appointments Clause and Took No Steps to Have ALJs Cure the Invalidity of Their Prior Orders.**

17.     The critical background for subsequent events in this case is the straightforward fact that, until at least 2018, the ITC appointed its ALJs in clear violation of the Appointments Clause.  Under that Clause, inferior officers of the United States may be appointed only by the President, by a court, or by the "Heads of Departments."  U.S. Const., art. II, § 2, cl. 2.

18.     The ITC's ALJs are inferior officers of the United States.

19.     The ITC explains that "[t]he primary role of the Commission administrative law judges is to conduct the trial phase of Commission investigations under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337)."  Office of the Administrative Law Judges, U.S. INT'L TRADE COMM'N, https://usitc.gov/glossary/term/office-administrative-law-judges (last visited Jan. 29, 2023).  In that role, a presiding ALJ "rules on motions during the trial stage and, following the trial, makes an initial determination as to whether a violation of section 337 exists, and makes findings of fact and law and recommendations as appropriate."  *Id.*

20.     "Following a hearing on the merits of the case, the presiding Administrative Law Judge issues an Initial Determination ('ID') that is certified to the Commission along with the evidentiary record. The Commission may review and adopt, modify, or reverse the ID or it may decide not to review the ID.  If the Commission declines to review an ID, the ID becomes the final determination of the Commission."   Answers to Frequently Asked Questions, Section 337 Investigations,               U.S.            INT'L            TRADE            COMM'N, https://www.usitc.gov/intellectual_property/documents/337_faqs.pdf (last visited Jan. 31, 2023); *see also* 19 C.F.R. § 210.43 (explaining circumstances under which "[t]he Commission shall decide whether to grant, in whole or in part, a petition for review of an initial determination").

21.     Because they wield significant discretionary power and their decisions may become the final determination of the agency, ITC ALJs are no different from the ALJs of the Securities and Exchange Commission (SEC) considered by the Supreme Court in *Lucia.*  Accordingly, the Court's conclusion that "the [SEC's] ALJs are 'Officers of the United States,' subject to the Appointments Clause," 138 S. Ct. at 2055, applies with equal force to the ITC's ALJs.

22.     And like the SEC's ALJs in *Lucia*, the ITC's ALJs were appointed in violation of the Appointments Clause.  "Only the President, a court of law, or a head of department" can appoint inferior officers of the United States.  *Id.* at  2051.  In *Lucia*, the Supreme Court held that the SEC's ALJs were not properly appointed because they were appointed by SEC staff.  *Id.*  But for a multi-member body like the SEC (or the ITC), "the Commission itself counts as a 'Head[] of Department[].'"  *Id.* at 2050 (quoting U.S. Const. Art. II, § 2, cl. 2); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 512 (explaining that "The Chairman … cannot be regarded 'as the head of an agency,'" while "[a]s a constitutional matter, we see no

reason why a multimember body may not be the 'Hea[d]" of a 'Departmen[t]' that it governs.")
(quotations omitted).

23.    In the ITC's case, prior to 2018, its ALJs were appointed by the Chairman of the Commission alone pursuant to 19 U.S.C. § 1331(a)(1)(A)(i), which permits him to "appoint and fix the compensation of such employees of the Commission as he deems necessary."

24.    The Chairman's reliance on that provision was misplaced, however, because—as noted above—the ITC's ALJs are not mere "employees," but rather inferior officers of the United States.  Accordingly, those ALJs must be appointed by the President, the courts, or a "Head of Department."  The Commission's enabling statute (like the statutes creating other multi-member commissions) makes clear that the Chairman alone is not a "Head of Department" within the meaning of the Appointments Clause, as the statute provides for six commissioners and imposes a quorum requirement for Commission action.  *See* 19 U.S.C. § 1330(c)(6) ("A majority of the commissioners in office shall constitute a quorum, but the Commission may function notwithstanding vacancies.").   The Chairman alone cannot exercise the authority of the Commission; only the Commission acting as a body can do so.

25.    Accordingly, because they were appointed by the Chairman alone, the ITC's ALJs—including the ALJ ████████████████ in this case—were appointed in violation of the Appointments Clause.

26.    On March 14 and 15, 2018, while *Lucia* was pending before the Supreme Court, the ITC Commissioners took a vote purporting to ratify the Chairman's earlier appointments of the Commission's ALJs.  The Commission did not provide any public notice of this action.

27.    In connection with its purported March 2018 ratification of the Chairman's earlier ALJ appointments, the Commission did not advise its ALJs that they should take any steps to

revisit, reconsider, or otherwise ratify any orders they had previously issued or actions they had previously taken in pending proceedings.

28.      In September 2018, following the Supreme Court's decision in *Lucia*, the ITC issued a public notice taking the position that its ALJs were properly appointed and/or ratified because, even though they had all been appointed by the Chairman alone, "no Commissioner has initiated a vote to disapprove the appointment of an ALJ, as is the Commissioner's right under 19 U.S.C. 1331(a)(1)(C)."  The Appointment of the Commission's Administrative Law Judges for Section 337 Investigations, 83 Fed. Reg. 45678 (Sep. 10, 2018).  That statute, as noted above, governs the hiring of Commission "employees," not the appointment of inferior officers of the United States.

29.      The September 2018 notice for the first time alerted the public to the Commission's purported March 2018 ratification of the Chairman's earlier ALJ appointments.  But once again, the Commission said nothing to advise ALJs to revisit, reconsider, or otherwise ratify any orders they had previously issued or actions they had previously taken in pending proceedings *before* that purported ratification.

30.      The ITC's actions in response to *Lucia* put it at odds both with guidance provided by the Department of Justice and with actions taken by other federal agencies.

31.      In a July 2018 memorandum addressed to the general counsels of all federal agencies, the Solicitor General explained that, for multi-member bodies like the ITC, the Head of Department that could validly appoint inferior officers was the multi-member body itself.  As the memo explained: "[f]or independent agencies headed by multi-member bodies, such as the SEC, the Department Head for Appointments Clause purposes is typically the multi-member body itself, acting by majority vote, rather than (for example) a commission chairman."  Memorandum from

the Solicitor General on Guidance on Administrative Law Judges after *Lucia v. SEC* (S. Ct.), U.S. Dep't of Just. (July 2018) at 4 (*available at* https://static.reuters.com/resources/media/editorial/20180723/ALJ--SGMEMO.pdf).

32.     Other agencies with ALJs also took action in light of *Lucia* to remedy the invalidity of prior actions taken by improperly appointed ALJs.  For example, on June 21, 2018, the SEC stayed *all* pending administrative proceedings set to be heard by any ALJ, In Re: Pending Admin. Proc., Exchange Act Release No. 83,495 (June 21, 2018), and later decided that the respondents in such proceedings should "be provided with the opportunity for a new hearing before an ALJ who did not previously participate in the matter."  In Re: Pending Admin. Proc., Exchange Act Release No. 83,907 (Aug. 22, 2018).

33.     The Social Security Administration (SSA), which "employ[s] more ALJs than all other Federal agencies combined," similarly recognized the legal vulnerability of all decisions made by unconstitutionally appointed ALJs.  SSR 19-1P, Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council, 2019 WL 1324866 (Mar. 15, 2019).  The SSA not only attempted to ratify the prior appointment of all of its ALJs (including Administrative Appeals Judges (AAJs)), but also advised that any claimant who had preserved a challenge as to the ALJ or AAJ that presided over his claim would be entitled to a new and independent hearing or review of the record.  *Id*.

34.     The Commodity Futures Trading Commission (CFTC), which employs a lone "Judgment Officer," also undertook remedial action in light of *Lucia*.  The CFTC attempted to ratify the appointment of its Judgment Officer and also ordered her to "reconsider the record, including all substantive and procedural actions taken" in *all* proceedings pending before her. CFTC Ratification and Reconsideration Order, In re: Administrative Proceedings (April 6, 2018),

*available at* .cftc.gov/sites/default/files/2018-04/ogcorder040918.pdf.  The CFTC also remanded

any actions pending before it on appeal to the Judgment Officer for similar reconsideration.  *Id.*

35.    Despite the clear risk that all prior actions taken by invalidly appointed ALJs were

constitutionally invalid, the ITC never instructed its ALJs to review, revisit, or ratify their prior

actions in pending proceedings, and those ALJs never did so.

   **B.    Plaintiff's Participation in ITC ████████████████ and the Entry
         of the ████████████████**

36.    In ████████████ retained Plaintiff as an economic expert in a patent-

infringement complaint filed before the ITC ████████████████████████

██████████████████. In response to ██████████████████████████

█████████, the ITC opened Investigation ████████████████ Investigation). ████████

██████████████████████████████████████████████

█████████████████████████████. The matter was assigned to

ALJ Thomas B. Pender. ████████████████████████████████

██████████████████████████████████████████████

████████████████████████████.

37.    As discussed in paragraphs 23 to 25 above, ALJ Pender was appointed by the ITC's

Chairman alone, not by the full Commission.

38.    Because an ITC ALJ is an inferior officer of the United States, ALJ Pender's

appointment violated the Appointments Clause, and ALJ Pender lacked the authority to exercise

any discretionary government power or to issue any binding orders.

39.    ████████████████████████████████████████

██████████████████████████████████████████████

████████████ (Ex. A). ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

40.    ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

41.    ███████████████████████████████████████████

████████████████████████████ (Ex. B).

42.    Although the full ITC purported to ratify the Chairman's earlier appointment of ALJ Pender in March 2018, he never took any steps to revisit, reconsider, or otherwise ratify any of his own prior orders, ███████████████.

43.    ██████████████, the ITC issued a final determination finding no violation of ███████ ███, and "terminating" the ███ Investigation. ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

44.    ███████████████████████████████████████████

███████████████████████████████████████████████████

13

████████████████████████████████████████████████████████

████████████████████████████████████████████████

**C.** ████████████████████████████████████████████
████████████████████████████████████

45.   ████████████████████████████ ALJ Pender made several unjustified and injudicious comments about Plaintiff that displayed a lack of judicial temperament and that damaged Plaintiff's business as an economic expert.   ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ In order to seek some redress ████████████████

████████████████████████████████████████████████

████████████████████████████████████

46.   ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

47.   ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

14

48. ██████████████████████████████████████████
████████

49. ██████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████

**D.** **The ITC** ████████████████████████████████
                                          **and Denies Him Due Process.**

50. ██████████ on May 25, 2022, Lisa Barton ████████████████
████████████████ sent Plaintiff a letter announcing that the Commission was launching a
proceeding into whether Plaintiff ███████████████████████████████████████
████████████ *See* Letter from Lisa R. Barton, Secretary to the U.S. Int'l Trade Comm'n, to
Plaintiff (May 25, 2022) (May 25 Letter) (Ex. C).

51. The May 25 Letter did not allege that Plaintiff ████████████████████
██████████████████

52. Instead, the sole basis for the ██████ proceeding ██████████████████
████████████████████████████████████████████████
████████████████████████████████

53. ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

54.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

55.    The ITC's May 25 Letter provided no real notice concerning the procedures that
would apply in this ██████ proceeding. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

56.    The May 25 Letter did not cite any statute or regulation detailing the Commission's
procedures.

57.    The *Federal Register* notice, however, did cite regulations making clear that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

58.     The May 25 Letter was, in effect, a demand that Plaintiff show cause ███████████
████████████████████████████████████.

59.     Despite the severity ███████████████████████████, the May 25 Letter
instructed Plaintiff that the *only* acceptable response would be "in the form of an affidavit" filed
within 14 days.  May 25 Letter at 2-3.

60.     Plaintiff retained counsel, and his attorney responded to the ITC's letter on June 7,
2022.  Letter from Christopher Landau to Lisa R. Barton, Secretary to the U.S. Int'l Trade Comm'n
(June 7, 2022) (June 7 Letter) (Ex. D).  Among other things, Plaintiff's attorney explained that
there could be no claim that Plaintiff ██████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███

61.     Plaintiff's counsel also explained that, because "[Plaintiff's] response to the May
25 letter is legal, not factual, in nature" and "[b]ecause there are no material facts that require

attestation, there is no basis for an affidavit." June 7 Letter at 3. Plaintiff's counsel noted that "the May 25 letter fails to identify any legal basis to require that the response ███████████ ██████████ must be provided in affidavit form." *Id.*

62. Finally, Plaintiff's counsel invited the ITC to discuss "ways in which this matter, as well as the overall dispute ███████████████████████████, can be amicably resolved." *Id.*

63. More than five months later, the ITC responded. Letter from Katherine M. Hiner, Acting Secretary to the U.S. Int'l Trade Comm'n, to Christopher Landau (Oct. 28, 2022) (October 28 Letter) (Ex. E). The ITC entirely ignored the legal arguments raised by Plaintiff's counsel. Instead, it focused solely on the fact that Plaintiff's counsel "did not attach, nor has the Commission otherwise received, an affidavit from Plaintiff that responds to that letter's inquiries, as instructed." *Id.* at 1.

64. The October 28 Letter asserted that, "███████████████████████████ ████████████████████████████████████████████████████████ the Commission instructs the parties to file their written submissions in the form of an affidavit." *Id.* at 1. The Commission identified no source of authority for this "instruct[ion]." The Commission also appears to have meant to cite ██████████████████████████████ ██████████████████.

65. In other words, █████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████, the Commission maintains an off-the-books, unwritten rule under which it "instructs" the parties that the only thing they are actually allowed to file in response to ████████ from the Commission is an affidavit

admitting or denying facts under oath.   No arguments from counsel are permitted under this unwritten rule.

66.     To avoid any doubt that it was strictly enforcing this extra-textual affidavit-only rule, the Commission made clear that Plaintiff's attorney's arguments would not be considered— indeed, that Plaintiff might be *penalized* if he submitted anything further from his attorney—by explaining that "any response submitted in a form other than an affidavit could lead the Commission to assume that the facts are contrary to [Plaintiff's] interests."  Oct. 28 Letter at 2.

67.     Despite the ITC's failure to identify any legal basis for that restriction, Plaintiff hoped to bring the proceedings to a close and, under protest, provided the ITC a detailed affidavit on November 18, 2022, along with a cover letter from his counsel.  *See*  Letter from Christopher Landau to Katherine Hiner, Acting Secretary to the U.S. Int'l Trade Comm'n (Nov. 18, 2022) (Nov. 18 Letter) (Ex. F); Affidavit of Plaintiff (Nov. 17, 2022) (Nov. 17 Plaintiff Affidavit). (Ex. G).

68.     Plaintiff's 14-page single-spaced affidavit provided a detailed factual response to the   requests for information made by the Commission in its May 25 and October 28 letters. Plaintiff specifically protested that the Commission's refusal to accept any submission other than an affidavit from him violated his due process rights, including by denying him representation by counsel.  Nov. 17 Plaintiff Affidavit ¶¶ 66-77.

69.     Plaintiff also instructed one of his employees to provide an affidavit ███████████

██████████████████████████████████████████████████████████████████

██████████

70.     Given the lack of any legal or factual basis for finding ███████████████, Plaintiff hoped that his submission of an affidavit would finally put the matter to rest.

71.     In the cover letter transmitting the affidavit, Plaintiff's counsel reiterated that the Commission was violating Plaintiff's due process rights.  *See* Nov. 18 Letter at 2.  He explained that "if the Commission were to insist that it would consider nothing other than an affidavit sworn by [Plaintiff], it would deny [Plaintiff] the ability to be represented by counsel in this proceeding, which would violate Plaintiff's due process rights."  *Id.*

72.     Plaintiff's counsel also requested "a hearing at which [Plaintiff's] position can be presented by counsel in person."  *Id.* at 3 ███████████████████████.

73.     On January 10, 2023, the ITC responded to Plaintiff's submission with a third letter. Letter from Katherine Hiner, Acting Secretary to the U.S. Int'l Trade Comm'n, to C. Landau (Jan. 10, 2023)  (Ex. H).  The letter did not acknowledge Plaintiff's counsel's arguments or his request for a hearing, nor did it address his objections to the Commission's process.

74.     Instead, in response to Plaintiff's submission of a comprehensive affidavit, the ITC "request[ed]" yet more information from Plaintiff.  *Id.* at 2-3.  The ITC sought a response within 14 days.  *Id.* at 3.

75.     Plaintiff's counsel requested an extension of the deadline until February 7, 2023 to evaluate his options in response.  The Commission granted that request.  On January 31, 2023, the Commission further extended the deadline to March 9, 2023 upon being informed that Plaintiff intended to file this action.

76.     As a result of the ITC's ███████ proceeding ██████████████████████████ ████, Plaintiff has incurred significant legal expenses, which he cannot recover.

77.     Because the ITC's ███████ proceeding is predicated ███████ issued by an ALJ who was improperly appointed, Plaintiff also continues to "'sustain[] injury' from an executive act

that allegedly exceeds the official's authority." *Seila Law LLC v. CFPB,* 140 S. Ct. 2183, 2196

(2020).

## COUNT ONE

### Application for Declaratory and Injunctive Relief to Stop
### Unconstitutional Agency Action

**The ██████████ Proceeding Violates Article II of the United States Constitution.**

78.     Plaintiff restates and incorporates by reference each and every allegation of the

preceding paragraphs.

79.     The ITC's ALJs are inferior officers of the United States whose appointments must

be made by a Head of Department under the Appointments Clause of the United States

Constitution.  Indeed, the ITC recognized as much in its September 2018 notice.

80.     As the Supreme Court recognized in *Lucia,* and as the Solicitor General

subsequently confirmed, for a multi-member commission like the ITC, the "Commission itself

counts as a 'Head[] of Department[].'"  *Lucia,* 138 S. Ct. at 2050; *see also Guidance on*

*Administrative Law Judges after Lucia v. SEC (S. Ct.),* at 4.

81.     At the time ALJ Pender entered ██████████, he had not been validly

appointed because he was appointed by the Chairman of the ITC alone and not by the Commission.

82.     Because of his invalid appointment, ALJ Pender lacked authority to issue ████

██████████.

83.     The Commission made no attempt to remedy the constitutional defect in ALJ

Pender's appointment until March 2018, when the Commissioners purported to ratify the

Chairman's earlier appointment of ALJ Pender.  That was ██████████ *after* ALJ Pender issued

██████.

84.    Even after the Commission's purported March 2018 ratification of his earlier appointment by the Chairman, ALJ Pender never revisited, reconsidered, or otherwise purported to ratify ███████.

85.    The current ITC ███████ proceeding is predicated on a nullity—the ███████ ███████ void *ab initio*.  The Constitution does not permit the ITC to use an unconstitutionally issued order to initiate "show cause" proceedings ███████.

86.    The Supreme Court's "precedents have long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority to wield that power," and squarely establish that when an agency action "violates the separation of powers it inflicts a here-and-now injury on affected third parties that can  be remedied by a court."  *Seila Law*, 140 S. Ct. at 2196 (internal quotation omitted).

87.    Plaintiff here challenges the ITC's authority to conduct a ███████ proceeding predicated on the ███████ issued by a person who had no power whatsoever to act because he had not been constitutionally appointed.

88.    Plaintiff is suffering immediate and ongoing injury as a result of the ITC's actions. Without relief from this Court, Plaintiff will continue to be subject to an unconstitutional ███████ proceeding predicated on an order issued by someone without constitutional authority to wield discretionary government power because he was invalidly appointed.  Being subjected to such a proceeding to enforce an order that was void from the outset is a constitutional injury that in and of itself constitutes irreparable harm.

89.    In addition, the ITC's actions have injured Plaintiff by forcing him to incur significant legal expenses defending against an *ultra vires* ███████ proceeding involving the

██████████████████████ that was void.  The expenses incurred in such a proceeding, which

cannot be recovered, are a further form of irreparable harm.

## COUNT TWO

### Application for Declaratory and Injunctive Relief to Stop
### Unconstitutional Agency Action

### The ████████████ Proceeding Violates Plaintiff's Due Process Rights.

90.     Plaintiff restates and incorporates by reference each and every allegation of the

preceding paragraphs.

91.     The ongoing ITC ████████ proceeding violates Plaintiff's Fifth Amendment due

process rights, including the right to be heard in a meaningful manner and the right to be heard

through counsel.

92.     Plaintiff has a liberty and property interest ████████████████████████████

████████████████████████████. ████████████████████ in the ITC proceeding threaten

those liberty and property interests and, accordingly, full protections of the Due Process Clause

apply to that proceeding.  *See*, *e.g.*, *Greene v. McElroy*, 360 U.S. 474, 492 (1959) ("[T]he right to

hold specific private employment and to follow a chosen profession free from unreasonable

governmental interference comes within the 'liberty' and 'property' concepts of the Fifth

Amendment"); ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████

93.     "The fundamental requirement of due process is the opportunity to be heard at a

meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(internal quotation omitted).  By forbidding Plaintiff from responding to its show-cause letter in

any manner other than a sworn affidavit—and by threatening that if Plaintiff dared to file "any response ... in a form other than an affidavit" the Commission would "assume that the facts are contrary to [Plaintiff's] interests"—the ITC deprived him of an opportunity to be heard in a meaningful manner. An affidavit necessarily addresses factual matter and cannot be used to fully develop legal arguments in the manner of a brief. Limiting Plaintiff's response to an affidavit thus necessarily prevented him from being heard in a meaningful manner in violation of his due process rights.

94.     The ITC also denied Plaintiff due process by using its unwritten affidavit-only rule to foreclose Plaintiff from being represented through counsel. It is well settled that "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Goldberg*, 397 U.S. at 270. And, "[i]f in any case, civil or criminal, a . . . court were arbitrarily to refuse to hear a party by counsel ... it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." *Powell v. Alabama*, 287 U.S. 45, 69 (1932).

95.     The potential ███████████ in the ITC's ongoing proceeding and the adversarial nature of that proceeding necessarily trigger a due process requirement that the Commission must allow the subjects of such proceedings to present their views through counsel. *See, e.g.*, *Goldberg*, 397 U.S. at 270; *Mathews*, 424 U.S. at 341 ("As *Goldberg* illustrates, the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process.").

96.     The due process rights that Defendants are violating are clearly established constitutional rights. *Cf. Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

97.     Plaintiff continues to suffer injury as a result of the ITC's actions.  Without relief from this Court, he will continue to be subject to a proceeding that denies him due process, including the right to be heard by counsel.  This ongoing constitutional injury in and of itself constitutes irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court order the following relief:

A.     A declaration that the ITC's ALJs are inferior officers of the United States whose appointments must conform to the Appointments Clause of the United States Constitution;

B.     A declaration that, pursuant to the Appointments Clause, the ITC's ALJs must be affirmatively appointed by the Commission itself, not by the Chairman of the Commission alone;

C.     A declaration that, at the time he entered ███████████████, ALJ Thomas B. Pender was not validly appointed under the Appointments Clause;

D.     A declaration ███████, insofar as it was entered at a time when ALJ Pender was not validly appointed under the Appointments Clause, cannot be used by the Commission as the basis for ████████████;

E.     An injunction preliminarily and permanently enjoining Defendants from using ██████ as the basis ████████████████;

F.     A declaration that the ITC's procedures for conducting ████████████ proceeding deprive Plaintiff of his constitutional right to due process to the extent those procedures preclude his ability to be heard through counsel and require him to provide responses solely in the form of a sworn affidavit;

G.     An injunction preliminarily and permanently enjoining Defendants from

limiting Plaintiff's ability to be heard by counsel and enjoining them from "assum[ing] that the facts are contrary to [Plaintiff's] interests" if he submits "any response … in a form other than an affidavit";

H.   An injunction preliminarily and permanently enjoining Defendants from considering the November 17, 2022 affidavit of Plaintiff or the November 17, 2022 affidavit of his employee, in any ultimate determination it makes, given that the affidavits were improperly coerced by Defendants' violation of Plaintiff's due process rights; and

I.   Any other relief which this Court may deem just and proper.

Dated: February 6, 2023


By:


 /s/  *Christopher Landau*
Christopher Landau (425319)
Patrick F. Philbin (453620)
John V. Coghlan (1020405)
ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
1155 F Street, N.W.
Suite 750
Washington, DC 20004
(202) 249-6900
clandau@egcfirm.com
pphilbin@egcfirm.com
jcoghlan@egcfirm.com

*Counsel for J. Gregory Sidak*