UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **J. GREGORY SIDAK**,<br><br>                  Plaintiff,<br><br>                  v.<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION**, *et al.*,<br><br>                  Defendants. | Case No. 1:23-cv-00325 (TNM) |

## MEMORANDUM OPINION

Plaintiff J. Gregory Sidak claims that he is trapped in an unconstitutional disciplinary proceeding before the U.S. International Trade Commission.  First, he alleges the sole basis for that proceeding is an order issued by an unconstitutionally appointed administrative law judge (ALJ).  Second, he claims that the Commission denied him due process by coercing him to provide an affidavit, rather than allowing him to speak through counsel.  The Commission responds that his claims are unripe, untimely, and forfeited.

Sidak's Appointments Clause challenge is purely legal and thus ripe for review.  And because he neither needed to nor could have raised that challenge previously, his Appointments Clause claim has not been abandoned.  More, as the Commission concedes, he is right on the merits.  So the Court will grant Sidak's motion for summary judgment and permanently enjoin the Commission from proceeding against him based on a constitutionally infirm order.  The Court thus need not decide whether the Commission has also denied him due process.

1

## I.

## A.

The facts are undisputed.  The Commission is an independent agency composed of six Commissioners appointed by the President.  *See* 19 U.S.C. § 1330(a).  The Commission has a broad mandate to ferret out "unfair methods of competition and unfair acts in the importation of articles."  *Id.* § 1337(a)(1)(A).  In other words, the Commission investigates intellectual property claims alleging patent or trademark infringement by imported goods.  *See generally* About Unfair Import Investigations, ITC, https://perma.cc/NP34-ZCF9.  The Commission employs ALJs to help resolve disputes.  *See* Joint Statement of Material Facts (SMF) ¶ 2, ECF No. 18.

These ALJs wield significant authority.  They preside over the discovery and trial phases of Commission investigations and make initial determinations.  *See id.* ¶¶ 2, 3; 19 C.F.R. § 210.27 (establishing ALJs' powers regarding discovery).  If the Commission does not review an initial determination, it adopts the ALJ's decision.  *See* 19 C.F.R. § 210.45(c).

Before 2018, the Commission's Chairman alone appointed ALJs.  *See* Appointment of the Commission's Administrative Law Judges for Section 337 Investigations, 83 Fed. Reg. 45,678 (Sept. 10, 2018); SMF ¶ 4.  Then things changed.  While a constitutional challenge to the appointment of the SEC's ALJs was pending before the Supreme Court, the Commission voted to ratify the Chairman's past ALJ appointments.  *See Lucia v. SEC*, 138 S. Ct. 2044 (2018); 83 Fed. Reg. 45,678; SMF ¶ 6.  But, against the Solicitor General's advice, the Commission did not direct its ALJs to rehear, reconsider, or ratify any decisions that they had made in pending proceedings.[1]  *See* Mem. from the Solicitor General on Guidance on Admin. Law Judges after

---

[1]  Other agencies acted to address the constitutional infirmity in prior actions taken by their ALJs.  The SEC, for instance, stayed all pending administrative proceedings set to be heard by any ALJ and later ordered that respondents in those proceedings "be provided with the

*Lucia v. SEC*, at 7–9 (July 2018), https://perma.cc/TXK2-QP2B.  The Commission does not

explain its disinterest in fixing its constitutional errors.

During the discovery phase of a Commission matter, parties exchange information under

agency rules.  *See* 19 C.F.R. §§ 210.27–34.  Third parties may also be subpoenaed to provide

information.  *See id.* § 210.32.  Because much of this information may be commercially valuable

or otherwise confidential, Congress created a mechanism for ensuring the confidentiality of such

information.  In most cases, information designated as confidential under Commission rules may

not be disclosed without the consent of the person submitting it.  *See* 19 U.S.C. § 1337(n)(1).

But information under a protective order may be disclosed within the bounds of that order.  *See*

*id*.  Relevant here, the Commission's rules allow ALJs to issue those protective orders.  *See* 19

C.F.R. § 210.34(a).

This case spawns from an old Commission investigation.  Back in 2017, Qualcomm filed

a patent-infringement complaint before the Commission against Apple.  *See* SMF ¶ 8.  The

Commission then opened an investigation and assigned the matter to ALJ Thomas Pender.  *See*

*id.* ¶¶ 8, 10; *Certain Mobile Electronic Devices and Radio Frequency and Processing*

*Components Thereof; Institution of Investigation*, 82 Fed. Reg. 37899 (Aug. 14, 2017).  Soon

after, ALJ Pender entered a protective order.  *See* Protective Order, SMF Ex. D, ECF No. 18-4.

The protective order was designed to shield confidential business information submitted during

the investigation.  It required recipients of confidential information to "utilize such [information]

---

opportunity for a new hearing before an ALJ who did not previously participate in the matter."
*In Re: Pending Admin. Proc.*, Exchange Act Release No. 83,907 (Aug. 22, 2018).  Similarly, the
CFTC ordered its single Judgment Officer to "[r]econsider the record, including all substantive
and procedural actions taken" in all pending proceedings.  CFTC Ratification and
Reconsideration Order, *In re: Pending Admin. Proc.*, (April 6, 2018), https://perma.cc/YU3C-
RP4N.

solely for purposes of this Investigation" and forbade parties from disclosing that information to persons not authorized under the protective order. *See id.* ¶¶ 3, 4, 12. It also required recipients to return or, with the producing party's consent, destroy all items containing confidential information. *See id.* ¶ 14.

This is where Sidak comes in. Qualcomm retained him as an expert witness for the investigation. SMF ¶ 9. And the protective order required expert witnesses to sign an acknowledgment agreeing to be bound by it. Protective Order ¶ 3. So Sidak signed an acknowledgment stating that he would "be bound by the terms of the Protective Order" and that he would not disclose confidential information to any person not designated by the order. *See* Acknowledgment, SMF Ex. E, ECF No. 18-5.

ALJ Pender issued his initial determination in the investigation in 2018. *See* SMF ¶ 14. The parties filed petitions for review, and the Commission in April 2019 reversed ALJ Pender's decision and terminated the investigation. *See id.* ¶¶ 16–17. Later that month, the parties to the investigation settled and agreed to dismiss all related litigation. *See id.* ¶ 18.

**B.**

Now for the substance of this case. According to Sidak, ALJ Pender made several "unjustified and injudicious comments" about him. Compl. ¶ 45, ECF No. 2. He claims this damaged his business as an economic expert. *See id.* Some of those comments were revealed in publicly released documents from the investigation. *See id.* But others were contained in sealed hearing transcripts subject to the protective order. *See id.* So Sidak began filing a series of Freedom of Information Act (FOIA) requests seeking access to transcripts and to "de-designate"

portions of the record that allegedly had been improperly designated as confidential.[2]  *See id.*

¶ 46; *see also* Letter from Lisa R. Barton to J. Gregory Sidak (May 25, 2022) (May 25 Letter),

SMF Ex. H, ECF No. 18-8.  The Commission's Secretary denied those requests.  *See* Compl.

¶ 48.

But the Commission was not finished with Sidak.  Following this denial, the Secretary

sent him a letter announcing that the Commission was launching a sanctions proceeding against

him to investigate "a possible breach of the administrative protective order" from the 2017

investigation.  May 25 Letter at 1.  In this letter, the Commission did not accuse Sidak of

disclosing any confidential information to any unauthorized third party.  Rather, the basis for the

inquiry was that Sidak's FOIA appeal to the Commission "included multiple pinpoint citations to

the confidential transcript of the [investigation's] evidentiary hearing."  *Id.*  In the Commission's

view, Sidak's appeal might have violated the protective order's requirements that he use

confidential information only in the investigation and return (or, with consent, destroy)

documents containing confidential information.  *See id.*

That proceeding threatened Sidak's livelihood.  Under the Commission's rules, he could

be "[p]ermanent[ly] disqualif[ied] from practicing in any capacity before the Commission." 19

C.F.R. § 210.34(c)(3).  More, the agency could refer the facts underlying the violation "to the

appropriate licensing authority."  *Id.*  And because Sidak is an attorney, that means he could be

disbarred.  So he lawyered up.  *See* SMF ¶ 19.

---

[2] The protective order contained a provision that Sidak alleges guarantees his right to pursue
FOIA requests challenging the status of the information withheld from the public.  It provides
that "[n]othing in this order shall abridge the right of any person to seek judicial review or to
pursue other appropriate judicial action with respect to any ruling made by . . . [the
Commission]'s Freedom of Information Act Officer . . . concerning the issue of the status of
confidential business information."  Protective Order ¶ 13.

The May 25 Letter stated that Sidak's "response should be in the form of an affidavit" describing the circumstances of the possible breach.  May 25 Letter at 2; *see also* Letter from Lisa R. Barton to Christopher Landau (Oct. 28, 2022) (Oct. 28 Letter), SMF Ex. J, ECF No. 18-10 (stating that "the Commission instructs the parties to file their written submissions in the form of an affidavit").  Sidak, through his lawyer, lodged several legal objections to the sanctions proceeding.  *See generally* Letter from Christopher Landau to Lisa R. Barton (June 7, 2022), SMF Ex. I, ECF No. 18-9.  And his lawyer explained that, because "Sidak's response to the May 25 letter is legal, not factual, in nature," and "[b]ecause there are no material facts that require attestation, there is no basis for an affidavit."  *Id.* at 3.

But the Commission was not interested in hearing from, nor responding to, Sidak's lawyer.  In its "second and final letter," the Commission reiterated its request for an affidavit and ignored his legal arguments.  *See generally* Oct. 28 Letter.  More, the Commission warned Sidak that he could be penalized if he were to submit anything further from his attorney.  *See id.* at 2. The letter cautioned that "*any response* submitted in a form *other* than an affidavit could lead the Commission to assume that the facts are contrary to Mr. Sidak's interest."  *Id.* (emphasis added).

The Commission had Sidak over a barrel.  So he submitted a detailed affidavit along with a cover letter from his counsel.  *See* Letter from Christopher Landau to Katherine M. Hiner (Nov. 18, 2022) (Nov. 18 Letter), SMF Ex. K, ECF No. 18-11; Aff. of J. Gregory Sidak (Sidak Aff.), SMF Ex. L, ECF No. 18-12.  In these, Sidak responded to Commission's information requests and protested "the Commission's demand that [he] provide specified information only in the form of an affidavit . . . and apparent refusal to consider" any legal arguments from his lawyer.  Sidak Aff. ¶ 67; *see also id.* ¶¶ 66–78.  He also "request[ed] that the Commission

consider this letter and [his] letter of June 7." Nov. 18 Letter at 2. And finally, he demanded an in-person hearing to present his legal arguments. *See id.* at 3 (citing 19 C.F.R. § 210.34(c)(1)).

The Commission responded with a letter requesting that Sidak provide another affidavit within two weeks. *See* Letter from Katherine M. Hiner to Christopher Landau (Jan. 10, 2023), SMF Ex. M, ECF No. 18-13. The letter ignored Sidak's concerns about proceeding through affidavit only. *See generally id.* Sidak's attorney requested an extension of the deadline to February 7, 2023, which the Commission granted. *See* SMF ¶ 25. But Sidak had seen enough. So, on February 6, he filed this case. *See generally* Compl.

Three days after Sidak sued, the agency changed its tune. It sent a "letter respond[ing] to an assertion [he] made in [his second] letter"—namely, his argument that requiring him to proceed through affidavit alone violates due process. *See* Letter from Lisa R. Barton to Christopher Landau (Feb. 9, 2023) at 1, SMF Ex. N, ECF No. 18-14. The Commission claimed that there may have "been a misunderstanding." *Id.* And it purported to "clarify" that Sidak "is free to submit" legal briefing along with his affidavit. *Id.*

Sidak now moves for summary judgment, seeking to permanently enjoin the Commission's sanctions proceeding against him.[3] *See* Pl.'s Mot. for Summ. J. (Pl.'s Mot.), ECF No. 11. The Commission moves to dismiss this case as unripe and alternatively for summary judgment. *See* Def.'s Mot. to Dismiss or for Summ. J. (Def.'s Mot.), ECF No. 19. The Court held a hearing on those motions, which are ripe for decision.

---

[3] Sidak initially moved for a preliminary injunction. *See* Mot. for Preliminary Inj., ECF No. 11. Because there are no material facts in dispute, the parties agreed to convert that motion to a motion for summary judgment with expedited briefing. *See* Joint Status Report, ECF No. 13; *see also* Scheduling Order, ECF No. 14.

## II.

To survive a motion to dismiss under Rule 12(b)(1), Sidak must show that the Court has jurisdiction, including that his claim "is ripe for judicial review." *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003). The Court must accept as true the Complaint's factual allegations and draw all reasonable inferences in Sidak's favor. *See Common Cause v. Trump*, 506 F. Supp. 3d 39, 44 (D.D.C. 2020) (three-judge panel). And the Court may also consider the undisputed facts in the record. *See id.*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In assessing that, the Court must "draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III.

The heart of this case concerns the constitutional requisites of an ALJ's appointment. The Appointments Clause describes the exclusive methods of appointing "Officers of the United States." U.S. Const. art. II, § 2, cl. 2. It provides that only the "President," "Courts of Law," or "Heads of Departments" may appoint "inferior Officers." *Id.*

The Appointments Clause is one of the crucial structural safeguards of the Constitution. Far from "merely dealing with etiquette or protocol," the Clause acts as a "bulwark against one branch aggrandizing its power at the expense of another." *Ryder v. United States*, 515 U.S. 177, 182 (1995) (cleaned up). It also "preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power." *Id.* And by "prevent[ing]

Congress from dispensing power too freely," it functions as a check on the legislative branch. *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 880 (1991).

Taken together, these limits on the appointment power "ensure that those who wield[] it [are] accountable to political force and the will of the people." *Id.* at 884. And to ensure accountability is not "lost in the nameless bureaucracy," violations of the Appointments Clause demand "remedies with bite." *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022).

In *Lucia*, the Supreme Court held that SEC ALJs are "Officers of the United States" rather than mere government employees. 138 S. Ct. at 2055. The Court explained that ALJs exercise "significant discretion" in presiding over adversarial administrative proceedings and issuing decisions that may be the agency's "last-word." *Id.* at 2053–54. And because SEC staff, rather than the Commission itself, appointed the deciding ALJ in *Lucia*, his appointment violated the Constitution. *Id.* at 2055. Neither party here suggests that ITC ALJs have materially different duties from the ALJ in *Lucia*.

Sidak alleges that, at the time ALJ Pender entered the protective order, ALJ Pender had been unconstitutionally appointed. The Commission concedes this. *See* Hr'g Tr. at 39–40. Recall that he had been appointed by the Commission's Chairman, rather than the full Commission, which is the "Head of Department" for Appointments Clause purposes. *See Lucia*, 138 S. Ct. at 2050; SMF ¶ 4–5. More, the Commission admits that any purported "ratification was not sufficient to rehabilitate the protective order." Hr'g Tr. at 39. And the Commission does not say that a statutory scheme forecloses judicial review until the conclusion of the sanctions proceeding, *cf. Thunder Basin Coal. Co. v. Reich*, 510 U.S. 200, 207–16 (1996), nor

that Sidak was not required to exhaust administrative remedies, *cf. Carr v. Saul*, 141 S. Ct. 1352 (2021).

Even so, the Commission insists that Sidak still loses for a few reasons. First, it says that his claim is unripe. Second, it argues that Sidak's challenge is untimely and forfeited. Finally, the Commission claims the protective order is saved by the de facto officer doctrine.

The Commission's defenses fail.

## A.

Consider first whether Sidak's Appointments Clause claim is "ripe for judicial review." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808. The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Id.* (cleaned up). And it "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* (cleaned up).

That doctrine has both a constitutional and prudential component. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427–28 (D.C. Cir. 1996). To establish the former, Sidak need only show that his "threatened injury is sufficiently 'imminent' to establish standing." *Id.* at 1428. He does so easily, and the Commission does not argue otherwise. The alleged injury is more than imminent—it is ongoing. Sidak contends that the sanctions proceeding against him is unconstitutional because it is based on a constitutionally infirm protective order. So he asserts "a here-and-now injury" from "subjection to an illegitimate proceeding." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903–04 (2023) (cleaned up); *see also Sea-Land Serv., Inc. v. DOT*, 137 F.3d 640, 648 (D.C. Cir. 1998) ("The concrete cost of an additional proceeding is a cognizable Article III injury.").

That leaves only prudential ripeness.  To determine whether a claim is prudentially ripe, courts consider both (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of postponing judicial review.  *See Nat'l Treasury Emps. Union*, 101 F.3d at 1431.

### 1.

Starting with fitness, the Court considers whether the claim presents a purely legal question.  *See Nat'l Min. Ass'n v. Fowler*, 324 F.3d 752, 757 (D.C. Cir. 2003).  If so, the issue is "presumptively reviewable."  *Id.*  That presumption applies here.  Sidak's Appointments Clause claim is purely legal because it concerns the constitutionality of the sanctions proceeding itself.  The Commission agrees.  *See* Hr'g Tr. at 41; *see also* Joint Status Report, ECF No. 13 ("The Parties currently believe that . . . the questions to be resolved by the Court are purely legal ones.").  So the Appointments Clause claim is "presumptively reviewable."  *Nat'l Min. Ass'n*, 324 F.3d at 757.

Nothing overcomes that presumption.  For example, the Commission has not explained how "consideration of the issue would benefit from a more concrete setting."  *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 464 (D.C. Cir. 2006).  Indeed, Sidak's Appointments Clause claim turns entirely on undisputed facts related to ALJ Pender's appointment and his entry of the protective order.  Requiring Sidak to run an administrative gauntlet would alter neither these facts nor their legal implications.

More, Sidak's claim would in no way benefit from agency expertise.  His Appointments Clause challenge presents a pure question of constitutional law (one that agencies have repeatedly bungled), rather than a technical one.  And "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures."  *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

The Commission responds that Sidak's lawsuit is a "premature attempt to circumvent the administrative process." Def.'s Mot. at 11. The Court disagrees. Sidak is "challenging the Commission['s] power to proceed at all, rather than action taken in the agency proceedings." *Axon*, 143 S. Ct. at 904. The Commission similarly points out that the ripeness doctrine is intended to stop courts from "'inappropriately interfer[ing] with further administrative action.'" Def.'s Mot. at 12 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). True enough. But there is nothing inappropriate about midstream review here; if Sidak is right, then the Commission lacked a basis to proceed at all.

The Commission also argues that the Court must wait and see whether a sanction is imposed before passing on the constitutionality of the proceeding. Not so. True, "the doctrine of prudential ripeness ensures that Article III courts make only decisions when they have to, and then, only once." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). But deciding Sidak's claim now adheres to that principle. His Appointments Clause challenge will be the same no matter what the Commission decides. Sanction or not, he must still endure an unconstitutional proceeding. *Cf. Axon*, 143 S. Ct. at 903 ("Axon would have the same claim had it won before the agency. The claim . . . is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker.").

Indeed, that no sanction might be imposed underscores why Sidak's Appointments Clause claim is fit for immediate judicial review. The Commission argues that should it decline to penalize Sidak, "the basis for this lawsuit would evaporate." Def.'s Mot. at 13. In other words, Sidak would be left with no avenue to "meaningfully pursue [his] constitutional claims" because his injury would not be redressable. *Free Enter. Fund v. Pub. Co. Acct. Bd.*, 561 U.S. 477, 490 (2010). And both *Axon* and *Free Enterprise Fund* teach that this possibility favors

12

immediate judicial review.  After all, "Congress rarely allows claims about agency action to escape judicial review."  *Axon*, 143 S. Ct. at 901; *see Free Enter. Fund*, 561 U.S. at 490.

The Commission's position, taken to its logical conclusion, would mean that a structural constitutional challenge to a proceeding could never be brought until that proceeding had run its course.  This is not the law.  The Supreme Court has repeatedly permitted such challenges to be brought against ongoing enforcement actions in order to enjoin the proceedings.  *See Axon*, 143 S. Ct. at 906 (permitting challenges to ongoing enforcement actions that allege unconstitutional impairment of President's removal power and combination of prosecutorial and adjudicative functions); *Free Enter. Fund*, 561 U.S. at 489–91 (allowing challenge based on alleged unconstitutional restrictions on President's removal power).

To be sure, this case does not present a structural challenge to the Commission's authority.  Sidak claims no ongoing problem with the Commission's makeup or authority.  *See* Hr'g Tr. at 11–12.  So *Axon* and *Free Enterprise Fund* do not directly control.  But these cases suggest the agency's ripeness arguments prove too much.  A challenge to an agency's power to bring an enforcement action is not unripe simply because the proceeding is ongoing and may result in no penalty.

The Commission's analogy to *American Petroleum Institute v. EPA* is unpersuasive.  *See* Def.'s Mot. at 12.  There petitioners challenged a rule, and, after that rule took effect, the agency proposed a new rule that would significantly amend the challenged one.  *See* 683 F.3d at 388.  Because the agency's position was "plainly a tentative one," the court held that a challenge to the initial rule was prudentially unripe.  *Id.* at 387–89.  The agency's "complete reversal of course" would, if adopted, require "substantively different legal analysis and would likely moot the analysis [the court] could undertake if deciding the case now."  *Id.* at 388–89.

Not so here.  For one, the Commission's position is far from tentative.  It has instituted a sanctions proceeding against Sidak.  The only thing left for the agency to decide is what penalty, if any, should result.  And the Commission's penalty determination is irrelevant.  Sidak will have the same Appointments Clause claim even if he wins before the agency.  His "current objection" to the very initiation of the sanctions proceeding will not "disappear" no matter what the agency decides going forward.  *Id.* at 388.  Nor will this Court's legal analysis of the merits of his claim change.

The Commission's reliance on *Hastings v. Judicial Conference of the United States*, 770 F.2d 1093 (D.C. Cir. 1985), is similarly misplaced.  *See* Def.'s Mot. at 15.  That case involved a facial challenge to an entire statutory scheme in which plaintiff asked the court to decide the constitutionality of "a host of powers" vested in the agency, "most of which ha[d] not been invoked and many of which may never be invoked" against him.  770 F.2d at 1102.  And plaintiff was "made no worse off by having to await final disposition of the proceeding."  *Id.*  That is not this case.  Sidak will be worse off if the Court waits to step in.  A "proceeding that has already happened cannot be undone."  *Axon*, 143 S. Ct. at 904.  So judicial review of Sidak's constitutional claim "would come too late to be meaningful."  *Id.*

Besides, the D.C. Circuit has rejected the Commission's reading of *Hastings*.  *See Nat'l Fed'n of Fed. Emps v. Weinberger*, 818 F.2d 935, 941 n.10 (D.C. Cir. 1987).  The agency leans heavily on *Hastings*' statement that "a court should be loath to interfere, by means of injunction, with ongoing proceedings" of an administrative agency.  770 F.2d at 1102; *see* Def.'s Mot. at 15.  But that broad principle "is simply inapplicable where, as here, the agency action presents an immediate and concrete threat of a constitutional deprivation."  *Weinberger*, 818 F.2d at 941 n.10 (cleaned up).

14

Sidak's Appointments Clause claim is fit for immediate decision.

**2.**

When, as here, "neither the agency nor the court have a significant interest in postponing review," the hardship prong "is largely irrelevant." *Elec. Power Supply Ass'n v. FERC*, 391 F.3d 1255, 1263 (D.C. Cir. 2004). Indeed, because Sidak's claim is "clearly fit to be heard," the Court "need not consider whether [Sidak] would suffer any hardship from . . . postponing its resolution." *Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957, 974 (D.C. Cir. 1996) (cleaned up). In any event, the hardship prong of the ripeness analysis also favors immediate review of Sidak's claim.

First, the Commission misapprehends the hardship standard. It contends that "the burdens and expenses of litigating are not an irreparable injury." Def.'s Mot. at 14. But that is not the test. In support, it cites one inapt case—*FTC v. Standard Oil Company of California*, 449 U.S. 232 (1980). *Standard Oil* concerned whether the FTC's issuance of a complaint constituted final agency action. It was in that context that the Court observed that the costs and annoyance of litigation do not qualify as irreparable harm. *See* 449 U.S at 243–45. *Standard Oil* did not even address ripeness, much less hold that "irreparable injury" is the hardship standard. *See generally id.*

Properly considered, Sidak has shown hardship. A plaintiff meets the standard if postponing review "foreclose[s] [his] right ever to get meaningful judicial review." *Pfizer Inc. v. Shalala*, 182 F.3d 975, 979 (D.C. Cir. 1999). Waiting until the sanctions proceeding concludes would do just that. Sidak's "here-and-now injury" of being subjected to a proceeding infected with constitutional error "is impossible to remedy once that proceeding is over." *Axon*, 143 S.

Ct. at 903; *see also Sea-Land Serv.*, 137 F.3d at 648 ("The concrete cost of an additional proceeding is a cognizable Article III injury").

Sidak's Appointments Clause claim is ripe.

**B.**

The Commission also argues that Sidak's Appointments Clause claim is (1) untimely and (2) forfeited.  It is wrong on both counts.

**1.**

Consider first timeliness.  Recall that Sidak agreed to the protective order in November 2017 and that the investigation terminated two years later.  SMF ¶¶ 12, 17.  But he only recently filed suit.  The Commission argues that he waited too long to raise an Appointments Clause challenge, and that his claim here is thus untimely.  *See Lucia*, 138 S. Ct. at 2055 (requiring "timely challenge" to adjudicator's appointment); *Ryder*, 515 U.S. at 182 (same).  Complicating matters, neither *Lucia* nor *Ryder* say how long is too long.  *See Carr v. Saul*, 141 S. Ct. 1352, 1362 (2021).  Those cases did not have "occasion to opine on what would constitute a 'timely' objection in an administrative review scheme like" the Commission's.  *Id.*

The Supreme Court's decision in *Carr*, however, easily disposes of the Commission's timeliness argument.  There, an agency argued that petitioners had failed to bring "timely [Appointments Clause] challenges" because they never brought those claims during administrative proceedings.  141 S. Ct. at 1362.  The Supreme Court flatly rejected this argument.  It held that "[w]here . . . claimants are not required to exhaust certain issues in administrative proceedings to preserve them for judicial review, claimants who raise those issues for the first time in federal court are not untimely in doing so."  *Id.*  And the Commission does not argue that any statute or regulation required Sidak to exhaust his claim before the agency.

Thus, as in *Carr*, Sidak is timely in bringing his Appointments Clause challenge "for the first time in federal court." *Id.*

The Commission's attempts to distinguish *Carr* fail. First, it says that the administrative proceedings here were different. *See* Def.'s Mot. at 21. But the non-adversarial administrative scheme in *Carr* only mattered for deciding whether the petitioners needed to exhaust. *See* 141 S. Ct. at 1358 ("The desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." (cleaned up)). Sidak's duty to exhaust is not disputed here. The Commission never says that he needed to do so. So this argument gets it nowhere.

The Commission also claims that *Carr* is "inapposite" because "it concerned judicial review of the very administrative proceedings in which alleged Appointments Clause defects were presented." Def.'s Mot. at 21. But *Carr* is not so limited. Rather, "*Carr* confirms that [Sidak] was not required to first raise the Appointments Clause claim before the [agency] so long as he raised the constitutional challenge before the district court in the first instance." *Cody*, 48 F.4th at 963.

Though *Carr* teaches that Sidak's claim is timely, the Commission's arguments to the contrary fail on their own terms. In the Commission's view, Sidak needed to make his Appointments Clause claim during the 2017 investigation where he served as an expert witness. As we will see, the problem for the agency is that Sidak did not have the opportunity to raise a constitutional challenge to ALJ Pender's appointment until it used the protective order to initiate a sanctions proceeding against him. And "[f]ailing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made." Fed. R. Civ. P. 46; *see also Freytag*, 501 U.S. at 895 (1991) (Scalia, J., concurring in part and concurring in the judgment)

(explaining that "the rule[] generally governing the forfeiture of claims" in civil actions is Rule 46).

The "longstanding bright-line rule" is that "only parties can appeal an adverse underlying order or judgment." *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 991 (D.C. Cir. 2023). And Sidak was not a party to the investigation, only a witness. So before the current sanctions proceeding started, Sidak "had no opportunity to" challenge ALJ Pender's appointment and his issuance of the protective order. Fed. R. Civ. P. 46.

The Commission responds that Sidak had the chance to "raise his concerns" about ALJ Pender's appointment. Def.'s Reply at 11. First, the Commission says, Sidak could have "objected" to the protective order rather than agreeing to follow it. *Id.* This is unavailing. The agency provides no support for the notion that ALJ Pender would have considered a challenge to his appointment brought by a third-party witness.

Indeed, "ALJs [are not] capable of remedying any defects in their own appointments." *Carr*, 141 S. Ct. at 1361. So even if Sidak could have, for instance, filed a motion challenging ALJ Pender's appointment, it would have been futile for him to do so. It makes no sense to say that Sidak is untimely for not bringing a challenge that was sure to fail.

As a backup, the Commission contends that Sidak should have filed a comment with the agency. Relying on 19 C.F.R. § 210.50(a), the agency says that "interested persons [may] submit comments to the Commission during investigations regarding 'what action . . . if any'" it should take. Def.'s Reply at 11 (quoting *id.*). But that is no real solution. That provision allows people to make only certain suggestions. Not included is a suggestion that the ALJ should declare himself unconstitutional. *See* 19 C.F.R. § 210.50(a)(1) (The Commission shall "[c]onsider what action (*general or limited exclusion of articles from entry or a cease and desist*

18

*order, or exclusion of articles from entry under bond or a temporary cease and desist order*) . . . it should take." (emphasis added)).  A challenge to an ALJ's appointment or issuance of a protective order plainly falls outside the scope of actions the Commission entertains under § 210.50(a).

The Commission also faults Sidak for failing to file a lawsuit during the investigation or within the 60 days provided by statute for judicial appellate review of Commission determinations.  Def.'s Mot. at 17 (citing 19 U.S.C. § 1337(c)).  This is unpersuasive.  Section 1337(c) allows "[a]ny person adversely affected by a final determination of the Commission" to seek judicial review.  At that time, Sidak was not "adversely affected" by any determination of the Commission.  That came years later when it launched sanctions proceedings against him.  So this path was shut to him too.

### 2.

Consider next forfeiture.[4]  According to the Commission, Sidak lost his chance to bring his claim in federal court by some combination of his serving as a witness and agreeing to be bound by the protective order.  Def.'s Mot. at 21–23.  The Court disagrees.

The agency's forfeiture argument leans heavily on the logic of *Ciena Corporation v. Oyster Optics, LLC*, 958 F.3d 1157 (Fed. Cir. 2020).  There, the plaintiff "affirmatively sought a ruling" from the Patent Board, and "was content to have the assigned Board judges adjudicate its invalidity challenges until the Board ruled against it."  *Ciena Corp.*, 958 F.3d at 1159.  And

---

[4] Sidak argues that the Commission is actually making a waiver argument as far as the agency means that Sidak intentionally relinquished his Appointments Clause claim by agreeing to the protective order.  In reply, the Commission clarifies that it is not arguing intentional waiver.  *See* Def.'s Reply at 15 ("Forfeiture principles apply to Plaintiff's Appointments Clause claims without any requirement to show intentional waiver.").  In any event, courts have "often used [these terms] interchangeably," and this Court's analysis does not turn on that distinction. *Freytag*, 501 U.S. at 894 n.2.

because it had "requested" that the "Board adjudicates [plaintiff's]" rights, the court found that the plaintiff had forfeited its Appointments Clause challenge. *Id.* The court reasoned that "[w]here the decision to invoke a forum is left entirely to the parties, separation of powers concerns are diminished." *Id.* at 1161 (cleaned up).

Sidak's agreement to participate in the investigation as a witness bears little resemblance to plaintiff's conduct in *Ciena Corporation*. He did not "invoke a forum" nor "request" that ALJ Pender or the Commission "adjudicate" his rights. *Id.* at 1159, 1161. To be sure, Sidak agreed to be a witness. But agreeing to testify is materially different from invoking a forum and "affirmatively [s]eeking a ruling from the" Commission. *Id.* at 1159.

*Ciena Corporation* was a case of "clear waiver" by the complaining party. *Id.* at 1160. And the court was concerned that a litigant should not be able to get a second chance by strategically waiting to challenge an adjudicator's authority until after receiving an adverse decision. But here, Sidak brought his Appointments Clause challenge as soon as his rights were put at issue in the sanctions proceeding. This is not a situation where he "was content to have the assigned [ALJ] adjudicate" his claim "until the [ALJ] ruled against" him. *Id.* at 1159. He has not sandbagged the Commission nor strategically slept on his rights.

Finally, the Commission is wrong to suggest that Sidak—as Qualcomm's agent—is subject to the same forfeiture analysis as Qualcomm itself. *See* Def.'s Mot. at 22–23; Hr'g Tr. at 37–38. Even if Sidak were Qualcomm's agent, it does not follow that he could cause his principal to challenge ALJ Pender's appointment or to sue in federal court. And while an agent may waive a principal's rights, it is far from clear that the opposite is true. That would turn standard agency principles on their head. *See* Restatement (Third) of Agency § 1.01 (explaining

that an "agent shall act on the principal's behalf and subject to the principal's control"). So Sidak does not stand in Qualcomm's shoes simply because it retained him as an expert.

To be sure, this would be a very different case had Sidak been a party to the underlying dispute. The Court's forfeiture analysis here should not be understood to allow a party to invoke an agency's authority only to belatedly raise a constitutional challenge after receiving an adverse ruling.

### 3.

If Sidak's Appointments Clause claim were untimely or forfeited, the Court would still reach the merits of his challenge. As *Ciena Corporation* recognizes, even "in the face of a clear waiver or forfeiture," courts may consider claims "that implicate structural constitutional concerns." 958 F.3d at 1160–61. The Supreme Court has "expressly included Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Freytag*, 501 U.S. at 878–79.

Thus, in *Freytag*, the Court exercised its discretion to reach a challenge to the Special Trial Judge's appointment not raised below. *See id.* at 871–82, 878–80. This was so even though petitioner had affirmatively consented to trial before that judge. *See id.* at 878. The Court highlighted the Appointments Clause "in maintaining the constitutional plan of separation of powers." *Id.* at 879 (cleaned up). These "structural interests" belong to "the entire Republic" and "prevent[] Congress from dispensing power too freely." *Id.* at 880. Thus, the Court has disfavored rules that "would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." *Ryder*, 515 U.S. at 183.

Here too, "faced with a constitutional challenge that is neither frivolous nor disingenuous," this Court would use its discretion to reach Sidak's Appointments Clause claim even it were forfeited.  *Freytag*, 501 U.S. at 879.

The logic animating the forfeiture rule supports such an exercise of discretion here.  That rule is justified because "judicial review might be hindered by the failure of the litigant to allow the agency to make a factual record, exercise its discretion, or apply its expertise."  *Salt Lake Comm. Action Program v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993).  And for many of the same reasons this case is fit for immediate judicial review, these rationales do not apply here. *See supra* III.A.

For one, the Commission is an expert in enforcing unfair competition law, not discerning Appointments Clause problems.  And whether an ITC ALJ is an "Officer of the United States" neither involves any exercise of the agency's discretion nor depends on any factual development during the administrative process.

Plus, Sidak cannot have reasonably been expected to even be aware of his claim at the time of the investigation, much less bring it.  Can a witness be expected to research an agency's appointment process, compare it to developing Supreme Court law, and then figure out a creative way to object to the adjudicator?  Everything about the investigation led Sidak to reasonably understand that he was before an ALJ to give testimony as a third-party witness—not to challenge the structure of an agency that was not adjudicating his rights.  And recall that the Commission's procedures do not provide any mechanism for a third-party witness to raise such challenges to the agency.  More still, an Article III court was the first body that *could* have resolved Sidak's specific structural claim in this case.  *See Carr*, 141 S. Ct. at 1361.  So it was eminently reasonable for Sidak to make that claim here first.

Thus, it would be a particularly harsh exercise of this Court's discretion to deny Sidak the chance to raise his Appointments Clause claim. So the Court would reach the merits despite any forfeiture. *See, e.g.*, *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018) (excusing forfeiture of Appointments Clause challenge given "absence of legal authority addressing whether the Commission could entertain the claim" at all).

## C.

The Commission has one last arrow in its quiver. It urges that, regardless of the merits of the Appointments Clause claim, Sidak has no remedy under the de facto officer doctrine. This is incorrect.

When that doctrine applies, it "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder*, 515 U.S. at 180. In other words, the doctrine operates so that a defect in an official's appointment is not an adequate ground to challenge his earlier decisions. Thus, even if an appointment is proved unlawful, the appointee's acts retain legal force. If it applied here, Sidak could not challenge the sanctions proceeding because the doctrine would rehabilitate the unconstitutional ALJ's protective order.

But the doctrine does not apply here. It applies only to some *non*-constitutional appointments challenges. The Supreme Court has applied the doctrine where the defect of authority was "merely technical." *Nguyen v. United States*, 539 U.S. 69, 70 (2003). Not so here. The Framers had "a less frivolous purpose in mind" when drafting the Appointments Clause. *Ryder*, 515 U.S. at 182 (cleaned up). Indeed, far from "merely dealing with etiquette or protocol," the "Clause is a bulwark against one branch aggrandizing its power at the expense of

another branch." *Id.* More, it protects the "Constitution's structural integrity by preventing the diffusion of the appointment power." *Id.* And Supreme Court precedent bears this out.

Starting with *Glidden Company v. Zdanok*, 370 U.S. 530, 536 (1962), the Court concluded that the doctrine could not save judgments issued by judges appointed contrary to Article III. Though recognizing that the doctrine might "immunize from examination" a "defect in statutory authorization," the Court held that the doctrine could not rescue proceedings infected with constitutional error. 370 U.S. at 536–37. It emphasized "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers." *Id.* at 536.

Echoing *Glidden Company*, the Court later explained in *Ryder* that the past "cases in which we had relied on that doctrine did not involve 'basic constitutional protections designed in part for the benefit of litigants.'" 515 U.S. at 182 (quoting 370 U.S. at 536). Unsurprisingly then, *Ryder* held that plaintiffs raising timely Appointments Clause challenges are "entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Id.* at 182–83. Dispelling any doubt, the Court explained that to the extent prior cases "may be thought to have implicitly applied a form of the de facto officer doctrine" to Appointments Clause claims, "we are not inclined to extend them beyond their facts." *Id.* at 184 (citing *Buckley v. Valeo*, 424 U.S. 1, 142 (1976) (per curiam) and *Connor v. Williams*, 404 U.S. 549, 550–51 (1972)). "Any other rule," the Court reasoned, would discourage plaintiffs from bringing Appointments Clause challenges. *Id.* at 183.

After *Ryder*, the Supreme Court in *Lucia* "doubled down" on its holding that "the de facto officer doctrine has no place when Appointments Clause challenges are involved." *Rop v. FHFA*, 50 F.4th 562, 587 (6th Cir. 2022) (Thapar, J., concurring in part and dissenting in part) (citing *Lucia*, 138 S. Ct. at 2055). And *Lucia* reiterated that plaintiffs raising timely

Appointments Clause claims are entitled to relief.  *See* 138 S. Ct. at 2055.  As in *Ryder*, the Court reasoned that the availability of such relief is necessary "to create incentives to raise Appointments Clause challenges."  *Id.* n.5 (cleaned up).  Thus, employing the doctrine to deprive Sidak of a remedy and any incentive to bring his claim, as the Commission asks this Court to do, is incompatible with *Ryder* and *Lucia*.

Even before *Lucia*, the D.C. Circuit already recognized that the de facto officer doctrine is inapplicable to the Appointments Clause context.  *See SW General, Inc. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015).  The Circuit explained that "[i]n its most recent cases," "the Supreme Court has limited the doctrine, declining to apply it when reviewing Appointments Clause challenges." *Id.* (citing *Ryder*, 515 U.S. at 182–83).  So the Circuit again "disapprove[d] of any interpretation of the de facto officer doctrine that would render legal norms concerning appointment and eligibility to hold office unenforceable."  *Id.* (cleaned up).[5]

Thus, the de facto officer doctrine does not free the Commission from Sidak's Appointments Clause claim.  *See Rop*, 50 F.4th at 587 (Thapar, J., concurring in part and dissenting in part) ("Since this is an Appointments Clause challenge, *Ryder* and *Lucia* apply. Thus, the de facto officer doctrine does not prevent the shareholders from obtaining relief.").

---

[5]  The Commission responds that the doctrine applies under the Circuit's decision in *Andrade v. Lauer*, 729 F.2d 1475, 1496–1500 (D.C. Cir. 1984).  That decision cannot be squared with the later decisions in *Ryder*, *Lucia*, and *SW General*.  The agency asserts that *SW General* did not overrule this aspect of *Andrade* because the court there applied the doctrine in the very same case.  Def.'s Reply at 12.  The Court disagrees.  After observing that "the Supreme Court has limited the doctrine, declining to apply it when reviewing Appointments Clause challenges," *SW General* applied the de facto officer doctrine to a claim that an officer was appointed in contravention of a statute—not the Constitution.  796 F.3d at 72, 81.

**IV.**

The Commission concedes that ALJ Pender was unconstitutionally appointed when he entered the protective order. And the agency does not contend that a duly appointed officer subsequently ratified that order. So having disposed of the Commission's remaining arguments against granting relief, the only question left is remedy.

In a typical case, "the appropriate remedy for an adjudication tainted with an appointments violation is a new hearing before a properly appointed official." *Lucia*, 138 S. Ct. at 2055. That remedy serves two important purposes. It "directly" reinforces the "structural purposes" of the Appointments Clause, and it encourages litigants "to raise Appointments Clause challenges." *Id.* n.5 (cleaned up).

Because the Appointments Clause is central to the Constitution's structure, "the Supreme Court has established remedies with bite for Appointments Clause violations." *Cody*, 48 F.4th at 962. This means Sidak "is entitled to relief from any 'adjudication tainted with an appointments violation.'" *Id.* (quoting *Lucia*, 138 S. Ct. at 2055). After all, "where there is a legal right, there is also a legal remedy." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (quoting 3 William Blackstone, Commentaries on the Laws of England 23 (1765)).

ALJ Pender "lacked constitutional authority to do his job." *Lucia*, 138 S. Ct. at 2050. Given the "constitutional defect in the . . . method of appointment to that office," his actions in the investigation are "void." *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021). This includes the protective order that serves as the sole basis for the Commission's sanctions proceeding.

Taken together, the inescapable conclusion is that the proceeding pending against Sidak is "tainted with an appointments violation." *Lucia*, 138 S. Ct. at 2055. Without the ultra vires order, there would be no sanctions proceeding. And thus, the constitutional error committed by

the Commission when entering the order is "a continuing violation that infect[s]" the pending proceeding. *Brooks v. Kijakazi*, 60 F.4th 735, 742 (4th Cir. 2023).

So "[t]o cure the constitutional error," the Court must enjoin the Commission from using the protective order as a sword against Sidak. *Lucia*, 138 S. Ct. at 2055. The sanctions proceeding must stop. This is the only remedy that will eliminate the taint caused by the Commission's conceded Appointments Clause violation.[6]

\* \* \*

The Court's holding is narrow. The Court does not hold that *parties* to administrative proceedings can belatedly attack any adverse order based on alleged defects in the adjudicator's authority. The agency's timeliness and forfeiture arguments would fare much better if Sidak were a party. As the Commission acknowledged at oral argument, this "is an unusual case." Hr'g Tr. at 49. Indeed, neither side could point to a comparable one. The key features of this dispute are that Sidak was a third-party witness in the initial proceeding, and he had no obligation (nor opportunity) to earlier raise this claim in federal court.

If any broader reliance interests are affected in this case, the Commission is to blame. Unlike other agencies—and contrary to the Solicitor General's advice to undertake proper remedial actions in light of *Lucia*—the Commission took insufficient curative action.

---

[6] Because finding for Sidak on his Appointments Clause claim grants him the full relief he seeks, the Court does not reach his due process challenge.

**V.**

For these reasons, the Court will grant Sidak's motion for summary judgment on Count I and deny the Commission's motion to dismiss or for summary judgment.

Dated: May 5, 2023

TREVOR N. McFADDEN, U.S.D.J.